JESÚS PÉREZ COSME, Plaintiff and Appellee, v. VICENTE MONTAÑEZ ET AL., Defendants and Appellants.

No. 5860.   Argued December 16, 1932.—Decided March 4, 1933.

*M. García González* for appellants. *E. Martínez Rivera* for appellee.

Mr. Chief Justice del Toro delivered the opinion of the Court.

In the complaint filed in this suit it is alleged that the plaintiff is the owner of a piece of rural property measuring one-half acre (*cuerda*) and located in the ward of Candelaria of the Municipality of Toa Baja, and that he acquired it by purchase from defendant, Juana Beatriz Vázquez, in 1914 and has ever since held possession thereof quietly and peaceably as owner. It is further alleged that the parcel had been segregated from a 19.71-acre estate belonging to the vendor; that by a public deed dated May 5, 1930, defendant Juana Beatriz Vázquez appeared as selling to defendant Vicente Montañez a 12.71-acre parcel from the above estate, including therein the one-half acre previously sold to the plaintiff, and it was stated in the deed that part of the purchase price was to be paid to the other defendant, Severa Pinto; that at the time of the execution of the deed of sale to Montañez, the latter knew that the one-half acre

in question belonged to the plaintiff, and that upon being afterwards requested to execute an explanatory instrument excluding from the sale the one-half acre he has refused to do so, and that the aforesaid deed of sale to Montañez was recorded in the registry, for which reason the plaintiff is unable to record his property in his name.

The defendants demurred and answered. Their contention is that Montañez bought from Juana Beatriz Vázquez the property described in the deed of May 5, 1930, upon the terms therein stated; that the property was recorded in the registry in favor of the vendor; and that the purchaser recorded his title prior to the filing of the complaint.

The case went to trial and the court rendered judgment for the plaintiff. Feeling aggrieved thereby, the defendants took the present appeal and have assigned in their brief several errors which relate to the admission and weight of the evidence and to the application of sections 1376 and 1858 of the Civil Code and sections 33 and 34 of the Mortgage Law.

In our opinion the judgment should be affirmed. We do not think it was error to admit in evidence the private instrument offered by the plaintiff and which reads as follows:

"Received from Jesús Pérez the sum of $20 (Twenty Dollars) as the purchase price of one-half acre of land belonging to me, which I have sold to him for such sum, which land is located in the ward of Candelaria, municipal district of Toa Baja, and is bounded as follows: on the north by land of Mr. John O. Tofoss; on the south by the vendor; on the east by the latter; and on the west also by the said vendor.

"In witness whereof I execute the present instrument, at Candelaria, Toa Baja, this 27th day of Septemebr, 1914, in the presence of José Vélez and Augusto Salgado, witnesses who signed as such and at the request of the vendor who does not know how to sign. (Signed) José Vélez.—Juana B. Vázquez her (x) mark. (Signed) Augusto Salgado."

Although Augusto Salgado failed to appear as a witness, the instrument was acknowledged by the plaintiff and by the

witness José Vélez who signed it, and such evidence was admissible subject to the credit to be attached thereto by the court.

Nor do we find that the trial court erred in weighing the evidence.

That court, in its statement of the case and opinion, said in part as follows:

". . . . The court, adjusting the conflict in the evidence, gives full credence to the testimony of the plaintiff, and holds as proved that the one-half acre of land in the possession of Jesús Pérez Cosme and included within the 12.71-acre parcel described in the deed of sale belongs to said Jesús Pérez Cosme by purchase from Juana Beatriz Vázquez out of the main property of 19.71 acres. . . . The court finds that, notwithstanding the denial by Juana Beatriz Vázquez in her testimony of the fact that she had advised Montañez as to the previous sale to the plaintiff, it is a fact that she had so advised him and that Montañez acted with full knowledge of the facts. The preponderance of the evidence favors the plaintiff, because his evidence is stronger, more convincing, more precise and detailed; while that of the defendants is vague in some essential particulars and evasive in some of less import. . . ."

The testimony of the plaintiff is ample, detailed, and convincing and, together with that of José Vélez, adds weight to the instrument just transcribed which appears to the mind of the judge as the contemporaneous expression of the contract entered into.

The plaintiff did not confine himself to making the purchase. He personally took possession of the said parcel which he tilled himself, raising thereon a grapefruit grove and building on the land a two-story house. He did not share with anybody the products of his property, and in his capacity as owner he paid directly to the government the taxes assessed on it by the latter. He exhibited the tax receipts corresponding to the fiscal years 1917–18 and 1930–31. He was not a cropper (*agregado*), as claimed by the defendants. He was an owner.

Notwithstanding this being so, can and must it be con-cluded, as the appellants seem to urge, that because Monta-ñez had bought from the record owner and had registered in turn his title prior to the filing of the complaint, the plain-tiff has forfeited his title to the parcel bought by him in 1916 and whose possession he has held ever since as owner?

At the time of the purchase by the plaintiff the estate was not recorded in the registry. It was twelve years after-ward, in 1928, that Juana Beatriz Vázquez went before the court and established her ownership. There is evidence in the record tending to show that the plaintiff consented to a declaration of ownership regarding the whole estate in favor of Juana Beatriz Vázquez on the understanding that, once she succeeded in perfecting her title and in recording the same in the registry, she would execute a deed to the plain-tiff covering the portion previously sold to him by her, thus enabling the plaintiff to record his title in the registry of property without instituting separate dominion title pro-ceedings.

The sale to Montañez took place in 1930 with full knowl-edge on his part that the description of the estate of which he appeared to be the purchaser covered the one-half acre which had been sold to the plaintiff and was in the latter's possession. It was so held by the trial court in adjusting the conflict in the evidence in favor of the plaintiff, and the defendants have failed to show that the court acted with passion, prejudice or bias, or that it committed manifest error. On the contrary, from a consideration of the evi-dence introduced by both parties, our minds lean decidedly on the same side as did the mind of the trial judge. Montañez was an adjacent landowner with respect to the property in question, and everything leads to the belief that he had knowledge of all that had happened. However, this was not the only proof of notice to him adduced by the plain-tiff. There are his own admissions to Attorney Martínez. The latter not only testified at the trial that Juana Beatriz

Vázquez had told him that "she had instructed Montañez to execute the deed to Jesús Pérez and José Cruz," but also in a direct reference to Montañez, he stated among other things that "Montañez told me that he knew that that land and the houses and the grapefruit grove belonged to José Cruz and Jesús Pérez, but that he was interested in the grove and asked him to do his best to advise them to sell to him; that he was not interested in having their houses removed from there."

The previous knowledge on the part of Montañez of the plaintiff's title makes it easy to apply the law similarly as the trial court did. We will transcribe further from its opinion, as follows:

"Section 1376 of the Civil Code makes good faith a requisite for the purchaser who records and claim priority, as well as a pre-existent title in the vendor; and he who seeks to acquire what has been previously sold to another, whether by deed or otherwise, must suffer the consequences of his hazardous action. No one can convey the ownership of a thing which he no longer owns, and the vice of nullity thus created is not removed by a record. *A. Rojas & Co., Inc.* v. *Luna*, 39 P.R.R. 756; *Miranda* v. *Mun. of Aguadilla*, 39 P.R.R. 422.

"No right exists in the absence of title; and if the title is bad it is nonexistent in law. The record does not supply the title, nor is it a miraculous water that washes every stain. Article 33 of the Mortgage Law; 2 Galindo, '*Comentarios a la Legislación Hipotecaria*,' p. 496 *et seq.*

"Montañez is not, therefore, a *bona fide* purchaser protected by law as a third person, and the record of his title in the registry did not confer on him other rights than those held by Juana Beatriz Vázquez, nor did it prejudice the dominion title or the possession of plaintiff Jesús Pérez Cosme."

In *A. Rojas & Co., Inc.* v. *Luna*, 39 P.R.R. 756, cited by the trial court, citation is in turn made of *Abella* v. *Antuñano et al.*, 14 P.R.R. 485, 486, where it was held, to quote from the syllabus, as follows:

"In the case of a double sale of real property, the acquiring party who first obtains the admission of his deed to record is the owner

thereof. Although section 1376 of the Revised Civil Code does not expressly require that the acquiring party should act in good faith in the purchase of real property, good faith is nevertheless a necessary requisite for the purpose of admission of the deed to record.

"Although section 1376 of the Revised Civil Code does not provide that the preexistence of the right of a person conveying property is necessary, still it must be understood that this circumstance is one of the suppositions from which that section sets out.

"* * * * * * *

"The provisions of articles 36 and 38 of the Mortgage Law are applicable to cases of double sale provided the acquisition of real property in good faith and recorded in the registry is involved, and this is not so in the case at bar.

"A person acquiring in bad faith property which had been sold twice cannot claim that he is a third party in order to secure protection of his rights by the record of his deed in the registry of property.

"* * * * * * *

"Where a party sells property to one person and subsequently sells the same property to another person, the second purchaser, knowing that the property had been previously sold, although no deed had been executed, the second sale is null and void because no one can convey the ownership of a thing which he no longer owns, and this defect is not removed by the admission of a deed to record in the registry of property, according to the provisions of article 35 of the Mortgage Law."

The judgment appealed from must be affirmed.